# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

EDRIN KENNY ARDER TEMPLE,

    Plaintiff,

    v.

McINTOSH COUNTY, GEORGIA,
SHERIFF STEPHAN JESSUP,
individually and in his
official capacity, SERGEANT
ROBERT COX, individually and in
his official capacity, McINTOSH
COUNTY SHERIFF'S OFFICE, JOHN
DOES, AND CORPORAL DILLION
HOWARD, individually and in his
official capacity,

    Defendants.

No. 2:18-cv-91

## ORDER

Before the Court is Defendants McIntosh County, Georgia,
Sheriff Stephen Jessup,[1] individually and in his official capacity,
Sergeant Robert Cox, individually and in his official capacity,
Corporal Dillon Howard,[2] individually and in his official capacity,
and McIntosh County Sheriff's Office's Motion to Dismiss. Dkt.

---

[1] Improperly identified as Stephan Jessup in the Complaint.
[2] Improperly identified as Dillion Howard in the Complaint.

No. 4. The Motion has been fully briefed and is ripe for review.[3] For the reasons set forth below, Defendants' Motion is **GRANTED**.

## BACKGROUND

This case involves Plaintiff's claims against various law enforcement officers and entities for alleged actions taken against Plaintiff during an arrest. The facts stated herein are taken solely from Plaintiff's Complaint and are assumed to be true pursuant to Rule 12(b)(6). As stated in Plaintiff's Complaint, Plaintiff alleges that on or around July 21, 2016, he was standing in his father's yard talking to his father. Dkt. No. 1 ¶ 12. Law enforcement personnel from the McIntosh County Sheriff's Office arrived and ordered Plaintiff to get on the ground. Id. ¶ 13. Plaintiff left the immediate location on foot and was arrested by Defendant Cox. Id. ¶ 14.

Then, while Cox had Plaintiff on the ground secured in handcuffs, Defendant Howard and his K9 partner, Axel, charged toward Plaintiff. Id. ¶ 16. Howard shouted loudly to Cox, "Bobby watch out" and Cox intentionally positioned his body away from Plaintiff. Id. ¶¶ 17-18. K9 Axel bit and clamped down on Plaintiff's leg and thrashed violently back and forth resulting in Plaintiff experiencing excruciating pain and causing his left leg to bleed. Id. ¶¶ 21-22, 30-31. Neither Howard nor Cox gave K9

---

[3] Plaintiff never responded to Defendants' Motion to Dismiss that was filed on August 22, 2018, but as the 14-day deadline for a response to the motion has passed, Defendants' Motion is ripe for review.

AO 72A
(Rev. 8/82)

Axel a command to release his bite, and Cox did not intervene to pry K9 Axel off of Plaintiff's leg. Id. ¶¶ 24-26. While K9 Axel was clamped down on his leg, Plaintiff heard someone yell "[h]e's in handcuffs." Id. ¶ 28. Howard eventually grabbed K9 Axel by the collar causing the dog to release his bite. Id. ¶ 27. Cox called for an ambulance, but at no point did any of the law enforcement personnel present render first aid to Plaintiff. Id. ¶¶ 32-33. As a result of the dog bite, Plaintiff suffered severe and serious permanent injuries and mental anguish. Id. ¶ 34.

Plaintiff filed federal claims against Defendants for violations of the Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983 (Counts 1 and 2) and for municipal liability under 42 U.S.C. § 1983 (Count 3), and he filed state law claims of negligence, assault, battery, intentional infliction of emotional distress, and respondeat superior[4] (Counts 4-8). Plaintiff also claims that Defendants were deliberately indifferent to Plaintiff's rights under the Fourteenth Amendment (Count 9).[5] In response, Defendants filed a Motion to Dismiss on August 22, 2018, arguing that Plaintiff's Complaint fails to state a claim upon

---

[4] The Complaint says "Respondent Superior," but the Court construes this to be a claim for respondeat superior.
[5] The Complaint says "Indeliberate Indifference," but the Court construes this to be a claim for deliberate indifference.

which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiff has not responded to Defendants' Motion.[6]

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). However, the Court

---

[6] Plaintiff's Complaint also includes claims against unidentified "John Does," but those unidentified individuals are not at issue before the Court in Defendants' Motion.

does not accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

### I. Failure to Respond

As an initial matter, the Court will first address Plaintiff's failure to respond to Defendants' Motion to Dismiss. Local Rule 7.5 states that "[u]nless these rules or the assigned Judge prescribes otherwise, each party opposing a motion shall serve and file a response within fourteen (14) days of service of the motion. . . . Failure to respond within the applicable time period shall indicate that there is no opposition to [the] motion." Defendants filed their Motion to Dismiss on August 22, 2018, and Plaintiff was served in accordance with directives from the Court Notice of Electronic Filing. Dkt. No. 4 at 18. As of the date of this Order—over four months later—Plaintiff has not responded to Defendants' Motion.

"Because of this failure to respond, the Court considers Plaintiff to have 'no opposition' to the motion." Se. Bus. Network, Inc. v. Sec. Life of Denver Ins. Co., No. CV 415-159, 2015 WL 5092624, at *3 (S.D. Ga. Aug. 27, 2015) (quoting LR 7.5). "However, the Eleventh Circuit has held that a district court may only dismiss an action for failure to comply with a local rule when '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" Id. (quoting World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir.1995)). Here, the Court finds no evidence of a "clear pattern of delay or contempt," and therefore, the Court must review the merits of Defendants' Motion. Id.

## II. Claims Against McIntosh County Sheriff's Office

Turning to the merits of Plaintiff's Complaint, Plaintiff lists McIntosh County Sheriff's Office as a Defendant. However, "it is well-settled that sheriff's departments generally are not considered legal entities subject to suit." Davis v. Pope, No. CV 511-105, 2012 WL 3757653, at *2 (S.D. Ga. Aug. 28, 2012) (citing Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005); Bunyon v. Burke Cnty., 285 F.Supp.2d 1310, 1328 (S.D. Ga. 2003)). "[T]he capacity to be sued is 'determined by the law of the state in which the district court is held.'" Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (quoting Fed. R. Civ. P.

17(b)). Georgia "recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Id. (quoting Georgia Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (Ga. 1988)). The Eleventh Circuit and federal district courts in Georgia have routinely held that under Georgia law, sheriff's offices are not legal entities capable of being sued. See, e.g., Lawal, 196 F. App'x at 768 (affirming magistrate judge's finding that the Douglas County Sheriff's Department in Georgia was not capable of being sued); Lovelace, 144 Fed. App'x. at 795 (agreeing with the district court's finding that the Dekalb County Police Department was not a legal entity subject to suit under § 1983); Davis, 2012 WL 3757653 at *2 (finding Coffee County Sheriff's Office to not be a legal entity capable of being sued); Harris v. Lawson, No. 7:08-CV-70 (HL), 2008 WL 4003999, at *2 (M.D. Ga. Aug. 27, 2008) ("[T]here is no such provision in the Georgia Constitution or Code that designates a sheriff's office as a legal entity."). Accordingly, the McIntosh County Sheriff's Office is not capable of being sued in this case. Defendants' Motion with respect to the McIntosh County Sheriff's Office is **GRANTED** and the McIntosh County Sheriff's Office is **DISMISSED**.

## III. Federal Law Claims Under § 1983

### A. Claims Against McIntosh County, Georgia: Municipal Liability

Plaintiff also alleges claims against McIntosh County. Specifically, under Count 8, Plaintiff alleges that the acts of the other Defendants can be imputed to McIntosh County under a theory of respondeat superior.[7] In other words, it appears that Plaintiff is attempting to hold McIntosh County vicariously liable for the actions of employees of the sheriff's office or for violation of some official policy of custom.

First, to the extent that Plaintiff makes any federal claims against McIntosh County based on a theory of vicarious liability under 42 U.S.C. § 1983 (2018), those claims must fail. "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton County, 335 F.3d 1326 at 1329 (11th Cir. 2003) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

Moreover, any claims against McIntosh County for municipal liability under § 1983 also fail. A county can only be liable under § 1983 for acts for which it is "actually responsible". Id. Therefore, Plaintiff "must identify a municipal 'policy' or

---

[7] Plaintiff's Complaint lists the cause of action as "Imputable Negligence: Respondent [sic] Superior." Dkt. No. 1 at 12.

AO 72A
(Rev. 8/82)

'custom' that has caused [his] injury." Id. (citations omitted)
(alteration in original). Plaintiff can do this by identifying an
official policy or custom or an unofficial policy or custom as
evidenced by the repeated acts of a final policy maker for the
county. Id. But in doing so, the Plaintiff must show that the
county "has authority and responsibility over the governmental
function in issue"—which is the function of law enforcement in
this case. Id. at 1330.

Plaintiff cannot bring a policy or custom claim against
McIntosh County because the county does not have authority to
establish law enforcement policies or customs for sheriffs or their
employees. Here, the government function at issue is law
enforcement because this case involves allegations of excessive
force during an arrest. "In contrast to the State, counties have
no authority or control over, and no role in, Georgia sheriffs'
law enforcement function. Counties do not grant sheriffs their
law enforcement powers, and neither prescribe nor control their
law enforcement duties and policies." Id. at 1336 (citing O.C.G.A.
§ 15-16-23; Wayne County v. Herrin, 437 S.E.2d 793, 798 (Ga. Ct.
App. 1993)); see also Manders v. Lee, 338 F.3d 1304, 1311 (11th
Cir.2003) ("[U]nder Georgia's Constitution, the State has
exclusive authority and control over the duties and affairs of the
sheriff's office."). "Georgia sheriffs, when acting in the areas
of law enforcement, duties in the courts, and corrections, are

AO 72A
(Rev. 8/82)

'state actors,' not 'county actors.'" Slaughter v. Dooly Cty.,
No. 5:06-CV-143CAR, 2007 WL 2908648, at *6 (M.D. Ga. Sept. 28,
2007). Therefore, even if Plaintiff's Complaint alleged a law
enforcement policy or custom that caused him injury—which it does
not—Plaintiff could not hold McIntosh County liable for that
alleged policy or custom because the county has no responsibility
or authority over that governmental function.

Therefore, with respect to any federal claims against
McIntosh County, Defendants' Motion is **GRANTED**.

**B. Official Capacity Claims Against Sheriff Jessup, Sergeant
Cox, and Corporal Howard in their Official Capacities:
Eleventh Amendment Immunity**

Plaintiff brings claims against Sheriff Jessup, Sergeant Cox,
and Corporal Howard in their official capacities. In response,
these three Defendants argue that they are entitled to Eleventh
Amendment immunity from suit in their official capacities. Because
Jessup, Cox, and Howard act as arms of the state in their official
capacities when conducting law enforcement functions, they are
entitled to Eleventh Amendment immunity.

"The Eleventh Amendment protects a State from being sued in
federal court without the State's consent." Manders, 338 F.3d at
1308. The Eleventh Amendment bars suit when a state itself is

sued or when an "arm of the State" is sued.  Id. at 1308.[8]  "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id.  The Eleventh Circuit analyzes four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  Id. at 1309.

First, "under the Georgia Constitution, a sheriff's office is independent from the county in which it operates."  Townsend v. Coffee Cty., 854 F. Supp. 2d 1345, 1350 (S.D. Ga. 2011) (citing Grech, 335 F.3d at 1332, 1335).  As stated above, "[i]n contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function," and this rule extends to a sheriff's deputies who are "employees of the sheriff, not the county."  Grech, 335 F.3d at 1336.  Thus, the first factor weighs in granting Eleventh Amendment immunity. Second, the state has "direct and substantial control" over the

---

[8] When a plaintiff sues a state officer in his official capacity, that suit is considered a suit against the state, or an arm of the state, itself.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (citations omitted)).

sheriffs' offices, making this factor also weigh "heavily in favor" of granting immunity. Manders, 338 F.3d at 1322. The third factor cuts both ways because while counties bear "the major burden of funding" the sheriffs' offices, that funding is mandated by the state and the state separately funds sheriffs' annual training, provides for the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders in sheriff-supervised county jails. Id. at 1323. Because the counties cannot dictate how sheriffs spend the state-mandated budget funding, the Eleventh Circuit found in Manders that this "attenuated" financial control by the county compared to the state involvement was "sufficient to tilt the third factor . . . toward immunity." Id. at 1323-24. Finally, under the fourth factor, "a Georgia county is not monetarily responsible for judgments against a sheriff in tort or civil rights actions, but there is no law expressly requiring the state to pay such a judgment, so a sheriff would have to pay that judgment out of his sheriff's office budget." Townsend, 854 F. Supp. 2d at 1351-52 (citing Manders, 338 F.3d at 1327). However, even though this final factor cuts against immunity, it "does not defeat [the Defendants'] immunity claim." Manders, 338 F.3d at 1328.

Based on these factors, the Eleventh Circuit found in Manders that a sheriff was an "arm of the State" in regard to his use-of-force policy at a jail. Id. at 1328. This Court and others have

interpreted the holding in Manders to also apply to other law enforcement functions of sheriffs beyond jail responsibilities, such as arrests. See, e.g., Townsend, 854 F. Supp. 2d at 1352 ("[A]rrests fall squarely within the traditional law-enforcement responsibilities of a sheriff and his deputies."); Jude v. Morrison, 534 F. Supp. 2d 1365, 1372 (N.D. Ga. 2008) ("[T]his court notes that it is bound by the Eleventh Circuit's determination that when sheriffs (and their deputies) are performing law enforcement duties, they are considered to be an arm of the state, not county officials."); Lewis v. Wilcox, 3:06-CV-29, 2007 WL 3102189, at *9 (M.D. Ga. Oct. 23, 2007) ("Law enforcement, like corrections, is an area over which Georgia sheriffs exercise complete and independent control. Consequently, the factors as applied in Manders inform the Court's decision in this case." (internal citation omitted)). For example, in Townsend, this Court found that a sheriff's deputy was acting as an "arm of the State" and entitled to immunity where he detained a woman by grabbing her arm, placing his weapon to her head, and handcuffing her. 854 F. Supp. 2d. at 1349. This Court, interpreting Manders, reasoned that under those facts, an investigatory stop and arrest qualified as traditional law enforcement functions that "the state alone—not the county—has delegated to the sheriff's office." Id. at 1352. Here, the actions alleged against Defendants—excessive force used during an arrest of a suspect who was handcuffed and

AO 72A
(Rev. 8/82)

bitten by a police K9—also involved traditional law enforcement functions of arrest and detention. Thus, after analyzing the Manders factors and in accordance with the reasoning of that opinion, the Court finds that Defendants Jessup,[9] Cox, and Howard were acting as arms of the state in the alleged facts of this case and are therefore entitled to Eleventh Amendment immunity. Defendants' Motion with respect to claims against these three Defendants in their official capacities is **GRANTED**.[10]

---

[9] Although the Complaint does not allege that Sheriff Jessup was personally involved in the arrest, the Eleventh Amendment analysis under the Manders factors above still applies to claims against Jessup in his official capacity. The Complaint alleges in Count 9 either that Jessup was deliberately indifferent to the rights of Plaintiff under the Fourteenth Amendment—although this claim is only evidenced by the title of the count—or that he is liable in a supervisory capacity for failing to prevent his deputies from engaging in excessive force and failing to discipline them for excessive force. Any claims against Jessup in his official capacity under this count for any alleged policy or supervision related to excessive force still involve a law enforcement function, and thus, he is still considered an arm of the State under Manders. See Manders, 338 F.3d at 1319 ("The sheriff's authority to use force or the tools of violence, whether deadly or non-deadly force, . . . [is] directly derived from the State and not delegated through the county entity. In addition, use of force and creating force policy are quintessential policing functions, exercised by sheriffs in initial arrests . . . ."). If the Eleventh Circuit found that the sheriff in Manders was an arm of the state based on the factors described above for use of force policy in a jail, then it stands to reason that Sheriff Jessup in this case is an arm of the State for any alleged policy decisions or discipline for his deputies regarding excessive force in arrests. Therefore, Jessup is protected in his official capacity by Eleventh Amendment immunity and any claims against Jessup in his official capacity must be dismissed.

[10] Defendants also argue that they are not "persons" within the meaning of § 1983 because they are being sued in their official capacity and were acting in a law enforcement function under the authority of the state (and thus were equivalent to the state). Because the Court finds that Defendants are entitled to Eleventh Amendment immunity, it need not address this additional argument. See Manders, 338 F.3d 1304 at 1328 n.53 (declining to address this statutory issue under § 1983 on appeal).

## C. Claims Against Sheriff Jessup in His Individual Capacity: Supervisory Liability

Plaintiff also brings claims against Jessup, Cox, and Howard in their individual capacities. Defendants admit that Plaintiff has stated plausible claims at this stage against Cox and Howard in their individual capacities but argue that Plaintiff has failed to state a claim against Jessup in his individual capacity. Dkt. No. 4 at 1, 11.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cty., 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the

AO 72A
(Rev. 8/82)

subordinates would act unlawfully and failed to stop
them from doing so.

Cottone, 326 F.3d at 1360 (internal quotation marks omitted)
(citations omitted). "The deprivations that constitute widespread
abuse sufficient to notify the supervising official must be
obvious, flagrant, rampant and of continued duration, rather than
isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269
(11th Cir. 1999) (internal quotation mark omitted). "In short,
'the standard by which a supervisor is held liable in [his]
individual capacity for the actions of a subordinate is extremely
rigorous.'" Keith, 749 F.3d at 1048 (quoting Cottone, 326 F.3d at
1360) (alteration in original).

Here, Plaintiff's Complaint alleges no facts showing that
Jessup personally participated in the actions at issue in this
case. Rather, Jessup is only mentioned under Count 9 of the
complaint entitled "Indeliberate [sic] Indifference to Citizens
Rights Guaranteed by Fourteenth Amendment." Dkt. No. 1 at 13. To
state a claim under this count, Plaintiff must allege facts showing
a causal connection between Jessup's actions and the alleged
excessive force Plaintiff experienced in this case. However,
Plaintiff's Complaint fails to do just that.

First, in attempting to show a causal connection by
demonstrating a pattern of widespread abuse, the Complaint states
that "[u]pon information and belief that above-described excessive
force used against Mr. TEMPLE and the injuries he suffered as a

16

result is typical of the treatment others have suffered as a result of the use by MCSO of unreasonable and excessive force during arrests." Dkt. No. 1 ¶ 64. This statement on its own, without more, is insufficient to plausibly allege that Jessup was on notice of a history of widespread abuse that is "obvious, flagrant, rampant and of continued duration." Hartley, 193 F.3d at 1269. The Complaint does not even allege that Jessup was specifically on notice of any of this alleged "typical . . . treatment" of excessive force at the hands of the McIntosh County Sheriff's Office.

Second, Plaintiff attempts to show a causal connection through a policy or custom by stating that "JESSUP has the duty and responsibility as Sheriff . . . to supervise his deputies to ensure that they do not engage in a pattern, practice or custom of using unreasonable and excessive force during arrest and other deputy-citizen encounters" and that he also has the duty and responsibility to discipline deputies if they use excessive force. Dkt. No. 1 ¶¶ 67-68. But, like the pattern of widespread abuse justification, this statement on its own is insufficient to state a claim of supervisory liability against Jessup. Plaintiff has alleged no facts showing a specific policy implemented or enforced by Jessup. Saying that the actions that Plaintiff allegedly suffered were "typical" of others' experiences is insufficient to allege a specific policy. Id. ¶ 64. Moreover, Plaintiff simply

has not alleged facts showing any unofficial custom attributable to Jessup. The Eleventh Circuit has explained that a "custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law" and "[d]emonstrating a policy or custom requires 'show[ing] a persistent and wide-spread practice.'" Goebert v. Lee Cty., 510 F.3d 1312, 1332 (11th Cir. 2007)(citations omitted). Plaintiff has not alleged any facts supporting a custom of excessive force during arrests or any facts showing a persistent and widespread practice of excessive force. In fact, the Complaint merely states that Jessup has a duty to supervise his deputies to ensure that they do not engage in any pattern, practice, or custom; it does not allege that such a custom exists or to what extent it exists.

Third, Plaintiff alleges no facts in the Complaint that support an inference that Jessup directed his deputies to act unlawfully or knew that they would do so and failed to stop them. Rather, the Complaint merely states that Jessup knows "the use of unreasonable and excessive force to arrest persons violates the constitutional rights of such persons." Dkt. No. 1 ¶ 66. Thus, Plaintiff fails to plausibly allege a causal connection between Jessup and any alleged excessive force that Plaintiff experienced in this case.

Finally, although Count 9 of the Complaint, based on its title, appears to assert a claim for deliberate indifference

AO 72A
(Rev. 8/82)

against Jessup, that claim also fails because it does not sufficiently allege that cause of action. "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" <u>Franklin v. Curry</u>, 738 F.3d 1246, 1250 (11th Cir. 2013) (citations omitted). Here, Plaintiff does not allege that Jessup had subjective knowledge of a risk of serious harm, that he disregarded that risk, or that his conduct was more than gross negligence. At most, the complaint alleges that Jessup had general knowledge that excessive force is unconstitutional, but such an assertion is insufficient to allege a claim of deliberate indifference. <u>See</u> <u>id.</u> (holding that a defendant having general knowledge—"known or should have known"— is insufficient to state a claim for deliberate indifference). For this reason, in addition to Plaintiff's failure to allege a causal connection between Jessup and any alleged excessive force, Defendants' Motion is **GRANTED** with respect to claims against Jessup in his individual capacity.

## IV. State Law Claims

### A. State Sovereign Immunity

Plaintiff also raises a variety of state law claims against Defendants in this case. However, under the Georgia law of sovereign immunity, Defendants are immune from suit against these state law claims in their official capacities.

"In Georgia, 'sovereign immunity extends to the state and all of its departments and agencies.'" Carter v. Butts Cty., 821 F.3d 1310, 1323 (11th Cir. 2016) (quoting Ga. Const. art. I § 2, ¶ IX). This rule includes sheriffs and counties. Id. Moreover, "suits against county officials in their official capacities are in reality suits against the county." Muckle v. Robinson, No. 2:12-CV-0061-RWS, 2013 WL 251113, at *4 (N.D. Ga. Jan. 23, 2013) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). Therefore, "[a] defendant sued in his official capacity is entitled to the benefit of the sovereign-immunity defense, but only to the extent that the County has not waived it." Carter, 821, F.3d at 1323. Thus, Defendants are entitled to sovereign immunity against Plaintiff's state law claims unless Plaintiff can show that sovereign immunity has been waived. See id.

As to waiver, Plaintiff has not responded to Defendants' Motion, and therefore, Plaintiff has presented no argument or evidence that sovereign immunity has been waived for any these Defendants. "The burden of demonstrating a waiver of sovereign immunity falls on the party seeking to benefit from it." Id. at 1324. Plaintiff has not met that burden in this case.

Plaintiff's only mention of waiver is in one sentence of the Complaint which states: "Defendants have waived any defense of sovereign immunity by the purchase of liability insurance or otherwise." Dkt. No. 1 ¶ 9. As an initial matter, legal

AO 72A
(Rev. 8/82)

conclusions like this are inappropriate in a complaint and should instead be presented with supporting evidence in a response to Defendants' Motion to Dismiss. Even assuming that Plaintiff's waiver argument is properly raised, it still fails under Georgia law. "In Georgia, sovereign immunity may be waived only if 'a statute expressly provides that sovereign immunity is waived and the extent of such waiver.'" Carter, 821 F.3d at 1323 (quoting Grech, 335 F.3d at 1341). While Georgia has waived sovereign immunity for tort claims under the Georgia Tort Claims Act, that act specifically excludes counties from the waiver. See id. Moreover, in regards to liability insurance, while a Georgia statute does waive sovereign immunity for municipalities that purchase general liability insurance, that waiver does not apply to counties. Athens-Clarke Cty. v. Torres, 540 S.E.2d 225, 226 (Ga. Ct. App. 2000) (finding that the liability insurance waiver in "O.C.G.A. § 36-33-1 by its terms applies to municipal corporations, not to counties"); see also O.C.G.A. § 36-1-4 (2018) ("A county is not liable to suit for any cause of action unless made so by statute."). Finally, although "O.C.G.A. § 33-24-515 provides that a county waives its governmental immunity to the extent of the amount of liability insurance purchased for the negligence of its officers, agents, servants, attorneys, or employees arising from the use of a motor vehicle insurance," Gilbert v. Richardson, 452 S.E.2d 476, 480 (Ga. 1994), the alleged

actions in this case have nothing to do with negligence arising from the use of motor vehicles by any of the Defendants. For these reasons, the Court finds that Defendants have not waived their sovereign immunity.

Therefore, under Georgia law, McIntosh County is entitled to sovereign immunity against Plaintiff's state law claims.[11] Moreover, for the purposes of state sovereign immunity under the Georgia Constitution, Sheriff Jessup and his deputies, Cox and Howard, in their official capacities, are considered county officials. As a court in the Northern District of Georgia has stated, "[t]his is true notwithstanding the Court's determination that Sheriff [Jessup] and the deputy Defendants, in their official capacities, are 'arms of the state' for purposes of Plaintiff's section 1983 claims" and the Eleventh Amendment. Muckle, 2013 WL 251113, at *5. That court further explained that "the Georgia Court of Appeals has explained that while sheriffs, under certain circumstances, may be characterized as state actors for purposes of liability under section 1983, for purposes of liability under state law, sheriffs are officials of the county." Id. (citing Nichols v. Prather, 650 S.E.2d 380, 384 (Ga. Ct. App. 2007)); see

---

[11] The Court also recognizes that to the extent that Plaintiff makes any state law claims under a theory of respondeat superior against McIntosh County under Count 9 of the Complaint, those claims fail for an additional reason. "Georgia courts . . . speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities." Grech, 335 F.3d at 1337 (collecting supporting Georgia case law).

AO 72A
(Rev. 8/82)

also <u>Boyd v. Nichols</u>, 616 F. Supp. 2d 1331, 1348 (M.D. Ga. 2009) (finding sheriff to be arm of the state for Eleventh Amendment purposes but a county official for state sovereign immunity purposes). Thus, Jessup, Cox, and Howard are also entitled to sovereign immunity against Plaintiff's state law claims in their official capacities. Defendants' Motion with respect to any state law claims against McIntosh County or any state law claims against Jessup, Cox, or Howard in their official capacities is hereby **GRANTED.**

### B. Official Immunity

Plaintiff's Complaint might also make state law claims against Sheriff Jessup in his individual capacity.[12] However, to the extent that the Complaint does so, those claims must be dismissed because Jessup is entitled to official immunity under Georgia law. "With two exceptions, the Constitution of Georgia protects public officials from personal liability for actions performed in their official capacity." <u>Dukes v. Deaton</u>, 852 F.3d 1035, 1044 (11th Cir. 2017) (citing Ga. Const. Art. I, § II, para. IX.). "Official immunity does not apply to ministerial acts performed negligently or discretionary acts performed 'with actual

---

[12] Whether or not the Complaint makes state law claims against Sheriff Jessup in his individual capacity is unclear. Count 9 of the Complaint alleges violations by Jessup involving supervising and discipling his deputies, but the title of Count 9 cites the Fourteenth Amendment. However, out of an abundance of caution and because Defendants raise the issue, the Court will address Jessup's liability under possible state law claims.

AO 72A
(Rev. 8/82)

malice or with intent to cause injury.'" Id. (quoting Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007)). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Murphy, 647 S.E.2d at 57. However, "[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

Here, the allegations against Jessup involve his supervision of his deputies, which is undoubtedly a discretionary function under Georgia law. See Jackson v. Payne, 757 S.E.2d 164, 166 (Ga. Ct. App. 2014) ("[T]his Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."). Thus, under Georgia law, Jessup is only liable for exercising this discretionary function when the acts complained of are done with "actual malice or intent to injure." Dukes, 852 F.3d at 1045 (citing Bajjani, 647 S.E.2d at 60). "Actual malice means 'a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others. . . . A deliberate intention

AO 72A
(Rev. 8/82)

to do wrong . . . must be the intent to cause the harm suffered by the plaintiffs." Id.

Plaintiff has not alleged in the Complaint that Jessup acted with actual malice or intent to injure. As explained above, alleging that Jessup had general knowledge about excessive force being unconstitutional and a duty to supervise and discipline his deputies is not enough. Therefore, Defendants' Motion with respect to any state law claims against Jessup in his individual capacity is **GRANTED**, and Jessup is **DISMISSED** from the case.

## CONCLUSION

For these reasons, Defendants' Motion is hereby **GRANTED**. All claims against Defendants McIntosh County Sheriff's Office, McIntosh County, Georgia, and Sheriff Jessup are **DISMISSED**. Federal and state law claims against Defendants Cox and Howard in their official capacities are **DISMISSED**. The only remaining claims in this case are federal and state law claims against Defendants Cox and Howard in their individual capacities as well as claims against the unidentified "John Does" not at issue before the Court in Defendants' Motion.

**SO ORDERED**, this 22nd day of January, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA