FILED
John E. Triplett, Acting Clerk
United States District Court

By STaylor at 11:21 am, Nov 09, 2020

# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

EDRIN K. TEMPLE,

     Plaintiff,

     v.                                    No. 2:18-CV-91

SERGEANT ROBERT COX and
CORPORAL DILLON HOWARD, in
their individual capacities,
and JOHN DOES,

     Defendants.

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Dkt. No. 24) filed by Defendants Robert Cox and Dillon Howard (collectively, "Defendants"). The motion is fully briefed and ripe for review. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

### I.   Facts

This case arises out of Plaintiff Edrin K. Temple's ("Plaintiff") arrest and a police dog bite that occurred following a foot pursuit through the woods in McIntosh County, Georgia. Dkt. No. 28-2 at 1. On July 21, 2016, the McIntosh County Sheriff's Department executed a search warrant at 1577 Lewis Lane, located

in Darien, Georgia (the "Residence"). Dkt. No. 28-1 ¶ 1.[1] Upon the officers' arrival to the scene, Plaintiff fled into the woods behind the Residence. Dkt. No. 24-2 ¶ 4. Shortly thereafter, Deputy Dillon Howard ("Defendant Howard") began tracking Plaintiff through the woods with the help of his police canine, Axel. Dkt. No. 28-1 ¶ 3.

Deputy Robert Cox ("Defendant Cox")—who was on duty but not a part of the team executing the search warrant—heard the radio chatter regarding the search for Plaintiff. Dkt. No. 24-2 ¶ 10. Defendant Cox proceeded to the scene and took position down one of the roads off Highway 17 near the Residence. Dkt. No. 24-5 at 21.

Incidentally, Plaintiff ran directly toward Defendant Cox. Dkt. No. 24-1 at 3. Defendant Cox unholstered his weapon and demanded Plaintiff lie on the ground and place his hands behind his back. Id. Plaintiff complied, put his hands behind his back, and did not struggle. Dkt. No. 28-1 ¶ 7. Defendant Cox then secured Plaintiff in handcuffs without resistance in an open field area just outside the woods. Id. ¶ 8.

Immediately thereafter, Defendant Cox heard Defendant Howard yell "Bobby, watch out," from the tree line. Id. ¶ 9. When Defendant Cox looked up, he could see Defendant Howard and at least one other law enforcement officer sprinting out from the tree line,

---

[1] Plaintiff was identified in the search warrant application as having been observed making a sale of a controlled substance to a confidential informant at this location. Dkt. No. 24-7 at 3.

approximately 100 yards from Defendant Cox's location. Dkt. No. 24-1 at 3-4. Ahead of them by several yards was Axel, Defendant Howard's police canine, in a full gallop. Id. Defendant Cox, who was still kneeling beside Plaintiff at the time, jumped out of Axel's path. Dkt. No. 28-1 ¶ 13.

All parties agree that Defendant Howard gave at least one command for Axel to "recall" to his side. Id. ¶ 14. Further, Defendant Howard testified that neither he nor any other officer gave Axel a command to apprehend Plaintiff. Dkt. No. 28-5 at 55.

However, Axel disregarded Defendant Howard's "recall" command and proceeded to apprehend Plaintiff by biting him on the left calf. Dkt. No. 24-2 ¶ 20. Defendant Cox described the resulting bite as "bad," and testified that "chunks of flesh" were missing from Plaintiff's leg. Dkt. No. 28-2 at 3. After Defendant Howard got K-9 Axel to release Plaintiff, Defendant Cox radioed for paramedics to assist at the scene. Dkt. No. 24-1 at 4.

## II.  Defendants' Motion

Plaintiff claims that Defendants deprived him of his Fourth Amendment right to be free from an unreasonable seizure of his person in violation of 42 U.S.C. § 1983. Dkt. No. 1 ¶ 36. This alleged deprivation is set out in two claims: (1) a claim against Defendant Howard for use of excessive and unnecessary force, and

(2) a claim against Defendant Cox for failing to intervene in the use of excessive force by Defendant Howard. Id. ¶¶ 37, 41.[2]

Additionally, Plaintiff alleges various state law claims against Defendants. First, Plaintiff claims that both Defendants were "negligent in the handling of Axel and have violated state common law by allowing police officers to use excessive force against" Plaintiff. Id. ¶ 47. Second, Plaintiff claims that both Defendants are liable for assault, battery, and intentional infliction of emotional distress under Georgia state law. Id. ¶¶ 49-56. Plaintiff also named John Does as Defendants but has asserted no specific claim against them. Id. ¶ 7.

Comparatively, Defendants filed the present Motion for Summary Judgment. See Dkt. No. 24. Defendants contend that Plaintiff's remaining claims fail as a matter of law based upon qualified and official immunity. Dkt. No. 24-1 at 2.

### III. Evidentiary Issues

Defendant Howard testified that K-9 Axel took off running while exiting the woods, and that the sudden burst of speed broke Axel's leash restraint. Dkt. No. 28-5 at 24. Plaintiff, however,

---

[2] Plaintiff also alleged in his Complaint: "Defendant Howard did not render first aid to [Plaintiff] as required by [Sheriff's Department Policy]," "Defendant Cox called for an ambulance to come to the scene," and "[a]t no point did any of the law enforcement personnel on the scene render first aid to [Plaintiff]." Dkt. No. 1 ¶¶ 29, 32, 33. At no point, however, has Plaintiff amended his Complaint to include a claim of deliberate indifference to a serious medical need against Defendants Howard or Cox. Additionally, Plaintiff acknowledged during the September 23, 2020 motions hearing that he is not pursuing a Fourteenth Amendment claim for deliberate indifference to a serious medical need. Dkt. No. 38. As such, the Court need not discuss this issue.

points out that the leash was never logged into evidence and preserved. Dkt. No. 28-2 at 4. Instead, according to Plaintiff, the faulty leash "simply vanished into thin air." Id. Thus, Plaintiff contends that this "deliberate destruction" of the leash must be viewed as unfavorable evidence against the Defendants. Id. at 9.

Similarly, Plaintiff argues that Defendant Howard deleted photographs capturing Plaintiff's bite wounds. Id. at 4-5. Defendant Howard testified that after Plaintiff was taken into custody, another deputy sent a photo of Plaintiff's injury to Defendant Howard's personal phone. Dkt. No. 30 at 4. However, prior to the commencement of this lawsuit, Defendant Howard deleted these photographs from his phone. Id. Plaintiff maintains these photographs were a "critical piece of evidence" to the case. Dkt. No. 28-2 at 5. Consequently, Plaintiff contends Defendant Howard's deletion of those photographs constitutes spoliation of evidence. Dkt. No. 28-2 at 5.

As a preliminary matter, Plaintiff requests the Court impose spoliation sanctions on Defendants. Id. at 5, 9. ("[T]he deliberate destruction of the leash must be viewed as unfavorable evidence against the Defendants."). Thus, before addressing Defendants' Motion for Summary Judgment, the Court will first address Plaintiff's spoliation argument.

### PLAINTIFF'S REQUEST FOR SPOLIATION SANCTIONS

## I.   Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011) (quoting Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009)). The burden is on the movant seeking spoliation to show that "(1) the missing evidence existed at one time; (2) [Defendants] had a duty to preserve the evidence; and (3) the evidence was crucial to Plaintiff[']s being able to prove [his] prima facie case." In re Delta, 770 F. Supp. 2d at 1305. Moreover, "a party's failure to preserve evidence rises to the level of sanctionable spoliation only when the absence of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence." Id. (quotations and citations omitted); see also Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997).

If a plaintiff makes such a showing, then the Court must decide whether to issue sanctions. In determining the propriety of sanctions, the Eleventh Circuit has instructed lower courts to consider the following factors: "(1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5)

6

the potential for abuse of expert testimony about evidence not excluded." In re Delta, 770 F. Supp. 2d at 1305 (citing Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005)). Appropriate sanctions may include an adverse judgment, the denial of a defendant's motion for summary judgment, finding a presumption against the spoliator that the evidence was unfavorable, or the exclusion of evidence. Flury, 427 F.3d at 945.

## II. Discussion

Plaintiff has not met his burden of showing that the alleged spoliation occurred with either the leash or the photograph. With regard to the leash, Plaintiff contends that the leash was not properly preserved and simply "vanished into thin air" after the incident. Dkt. No. 28-2 at 4. However, Officer Howard testified that he believed he turned the leash over to Major Jenkins[3] during the internal investigation of the incident. Dkt. No. 24-4 at 28-29.

To establish spoliation, Plaintiff must at least show that the evidence at issue is missing. In re Delta, 770 F. Supp. 2d at 1305 (stating that a plaintiff must, along with other elements, show that "the *missing* evidence existed at one time" (emphasis added)). Despite learning as early as May 29, 2019 that the leash was possibly handed over to Major Jenkins/Internal Affairs,

---

[3] Major Jenkins is the deputy with Internal Affairs who conducted an investigation into the incident a few weeks afterward. Dkt. No. 30 at 2.

Plaintiff never deposed anyone at the Sheriff's Department regarding the location of the leash. Moreover, Plaintiff did not request the leash or any information regarding the leash during discovery. Dkt. No. 30 at 2. Even with ample opportunity for discovery, Plaintiff has presented no affidavits, declarations, or other evidence to support his contention that the leash was destroyed. Plaintiff had discovery tools available to him to investigate the location of the leash, to determine whether he could obtain it, and if not, to discover why the leash was, indeed, missing. Consequently, Plaintiff's spoliation allegations regarding Axel's leash must fail because he has not shown that the evidence is "missing" in this case.

Plaintiff also contends that Defendant Howard's deleting the photograph of Plaintiff's injury from his personal phone constitutes spoliation. Dkt. No. 30-3 at 13:52:14-13:52:34. Indeed, the record indicates that Defendant Howard deleted the photo roughly a week after the incident. Dkt. No. 28-1 ¶ 19. Nonetheless, the Court again concludes Plaintiff has failed to meet his burden in establishing a claim for spoliation sanctions. First, similar to the missing leash, Plaintiff has not demonstrated why discovery could not produce the evidence at issue. Although Defendant Howard deleted the photo from his phone, his testimony indicates another deputy sent him the photo, meaning the one Howard deleted was not an original. Nonetheless, Plaintiff still did not

8

attempt to obtain these photographs from the original photographer or any other Sheriff's Department employee.

Moreover, nothing in the record indicates that Defendant Howard acted in bad faith when he deleted the photograph of Plaintiff's injury. Defendant Howard stated in his Internal Affairs interview that the photo was on his phone for maybe a week after the incident. Dkt. No. 30-3 at 13:52:14-13:52:34. As such, the photo was deleted almost two years prior to the filing of Plaintiff's Complaint. As the party seeking spoliation sanctions, Plaintiff bears the burden of proof, and he has failed to introduce any evidence that Defendant Howard was on notice of this pending litigation at the time he deleted the photo. See Griffin v. GMAC Commercial Fin., LLC, No. CIVA 1:05CV199 WBHGG, 2007 WL 521907, at *3 (N.D. Ga. Feb. 15, 2007) (defining spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (emphasis added)). Likewise, Plaintiff has failed to demonstrate that Defendant Howard deleted the photo with the intent to avoid its production to establish the "egregious circumstances" necessary for bad faith. In re Delta, 770 F. Supp. 2d at 1309; cf. Connor v. Sun Tr. Bank, 546 F. Supp. 2d 1360, 1377 (N.D. Ga. 2008) (finding bad faith because the defendant affirmatively deleted an e-mail—in disregard of preservation instructions—in order to avoid its production during

9

discovery). This is not "a case of knowing and willful disregard for the clear obligation to preserve evidence that was solely with the possession and control of the Defendant[]." Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009). At best, Defendant Howard's actions constitute mere negligence. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (mere negligence in failing to preserve evidence does not show bad faith).

Finally, Plaintiff does not demonstrate how the photograph capturing Plaintiff's bite wound would be "crucial" to prevailing on his claims. In re Delta, 770 F. Supp. 2d at 1305. Defendants do not contest that K-9 Axel bit Plaintiff. Plaintiff has failed to provide any reason as to why this photograph would be a key piece of evidence relevant to his case. Cf. Flury, 427 F.3d at 943 (awarding sanctions in part because the destroyed evidence was "the most crucial and reliable" evidence to the case).

Because Plaintiff has failed to meet his burden with regard to spoliation of both the leash and the photograph, the Court will not construe the lack of these evidentiary items as unfavorable evidence against Defendants in evaluating Defendants' Motion for Summary Judgment.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.    Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains

supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## II.  Discussion

### A. Constitutional Violations

Plaintiff claims that Defendants deprived him of his Fourth and Fourteenth Amendment constitutional rights in violation of 42 U.S.C. § 1983. Dkt. No. 1 ¶ 36.[4] Defendants contend that the Court

---

[4] Plaintiff pursues claims of excessive force under both the Fourth and Fourteenth Amendments. In assessing an excessive force claim, "'the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit.'" Nasseri v. City of Athens, 373 F. App'x 15, 17 n.2 (11th Cir. 2010) (quoting Hicks v. Moore, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005)). Nonetheless, the distinction has been reduced to one of name rather than substance because the Supreme Court has now clarified that only the objective (and not subjective) standard applies to a pretrial detainee's Fourteenth Amendment excessive-force claim. Kingsley v. Hendrickson, 576 U.S. 389, 395 (2015). Thus, an excessive force claim arising from an interim period between arrest and detention is now governed by the same

should grant their Motion because, inter alia, qualified immunity shields them from liability for the conduct at issue. Dkt. No. 24-1 at 9.

## 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be entitled to qualified immunity, a government official must first demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (citations omitted).

If a defendant satisfies this burden, then the Court must grant qualified immunity unless the plaintiff can demonstrate: (1) that the defendant's alleged actions violated a constitutional or statutory right; and (2) that such a right was clearly established. Bogle v. McClure, 332 F.3d 1347, 1355 (11th Cir. 2003). Courts

---

objective reasonableness standard, regardless of whether it is brought under the Fourth or Fourteenth Amendment. See id. As such, for the sake of clarity, the Court will construe Plaintiff's complaint as asserting a claim for violation of his Fourth Amendment rights, which follows the precedent of similar Eleventh Circuit cases decided after Kingsley. See, e.g., Corbitt v. Vickers, 929 F.3d 1304, 1313 (11th Cir. 2019), cert. denied, 207 L. Ed. 2d 1051 (June 15, 2020) (indicating that claims involving police officers using excessive force on a person already seized are analyzed under the Fourth Amendment) (citing Graham v. Connors, 490 U.S. 386, 395 (1989)).

have the discretion to determine which of these two prongs it will address first. See Pearson, 555 U.S. at 232; see also Williams v. Russo, 636 F. App'x 527, 532 (11th Cir. 2016).

## 2. Defendant Howard

Plaintiff alleges that Defendant Howard "maliciously, intentionally[,] and with deliberate indifference" deprived Plaintiff of his Fourth Amendment right to protection from "the use of excess force" by "allowing" Axel "to viciously bite" Plaintiff's left leg "while he was handcuffed." Dkt. No. 1 ¶ 37. The Fourth Amendment right to be free from unreasonable seizures includes the right to be free from excessive force during an arrest. Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). In opposition, Defendant Howard asserts that summary judgment is warranted because both prongs of qualified immunity have been satisfied. The Court agrees.

The Court will first assess whether Defendant Howard was acting within the scope of his discretionary authority while pursuing and apprehending Plaintiff. To demonstrate discretionary authority, Defendant Howard must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The Eleventh Circuit has consistently ruled that the decisions police officers make while pursuing and apprehending a

fleeing suspect are within their discretionary authority. See, e.g., Crenshaw v. Lister, 556 F.3d 1283, 1289–90 (11th Cir. 2009); Perez v. Suszczynski, 809 F.3d 1213, 1218 (11th Cir. 2016) (finding that an attempt to arrest or seize a suspect demonstrates that an officer was "clearly engaged in a discretionary capacity"). Here, Defendant Howard was performing a legitimate job-related function in his attempt to pursue and apprehend Plaintiff when Plaintiff was bitten by K-9 Axel. The Court concludes Defendant Howard was acting within the scope of his discretionary authority during the alleged wrongful conduct. Therefore, qualified immunity applies unless Plaintiff can demonstrate that: (1) Defendant Howard's alleged actions violated a constitutional or statutory right; and (2) such a right was clearly established law at the time of the incident.

Defendants argue that Plaintiff has failed to show that Defendant Howard's conduct violated any clearly established law. Dkt. No. 30 at 10. If a defendant does not act in violation of clearly established law, then the claim will not proceed past summary judgment. See Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[I]f the law is not clearly established, the official is entitled to summary judgment regardless of factual disputes." (quoting Harlow, 457 U.S. at 818)). The "clearly established" requirement is designed to ensure that officers have fair warning of the conduct which is proscribed. Hope v. Pelzer, 536 U.S. 730,

739 (2002). Thus, the salient question is whether "the state of the law" at the time of the incident gave Defendants "fair warning" that their conduct was unlawful. Id. at 741. "Fair warning" is established by binding case law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that "makes it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (2000).

Accordingly, to overcome a defendant's qualified immunity defense once presented, the plaintiff must point to earlier case law from any of the above-mentioned courts that is "materially similar" in fact and provided "clear notice" that a defendant's conduct violated the plaintiff's rights. Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007). Alternatively, a plaintiff can show that the "general rules of law from a federal constitutional or statutory provision or earlier case law" apply to the circumstances in question with "obvious clarity" and clearly establish the unlawfulness of the defendant's conduct. Id.

In the Eleventh Circuit, it is clearly established law that "a police dog bite after a defendant has been subdued, surrendered, or has ceased resisting or fleeing would violate the suspect's constitutional rights." Lafavors v. Jenne, No. 05-14410, 2006 WL 249544, at *2 (11th Cir. Feb. 2, 2006) (citing Priester v. City of Riviera Beach, 208 F.3d 919, 924–25 (11th Cir. 2000); Kerr v. City

16

of West Palm Beach, 875 F.2d 1546, 1551–52 (11th Cir. 1989)). As such, Plaintiff argues that it is clearly established that Defendant Howard "could not deploy his canine partner (Axel) against an individual handcuffed behind his back, lying on the ground and cooperating with another officer." Dkt. No. 28-2. However, the undisputed evidence shows that the dog bite was accidental.

Within the context of qualified immunity, the Eleventh Circuit has held that "there is no clearly established right to be free from *accidental* application of force during arrest, even if that force is deadly." Cantrell v. White, 178 F. Supp. 3d 1308, 1314-15 (N.D. Ga. 2016) (emphasis added) (quoting Speight v. Griggs, 620 F. App'x. 806, 809 (11th Cir. 2015) (per curiam)).[5] Therefore, if an officer's use of force was constitutionally excessive, but unintentional, "he would be entitled to qualified immunity." Cantrell, 178 F. Supp. 3d at 1315.

Although an *intentional* deployment of K-9 Axel on Plaintiff may give rise to a viable claim, there is no evidence showing that the dog bite was anything other than accidental. The undisputed evidence shows that Defendant Howard intended to use Axel to track Plaintiff. Upon seeing Plaintiff, Axel pulled and snapped the leash restraining him. All parties—even Plaintiff—agree that Defendant

---

[5] The Eleventh Circuit considers the use of a police canine to apprehend a suspect to be "extraordinary but not deadly force." Edwards v. Shanley, 666 F.3d 1289, 1295 (11th Cir. 2012).

Howard gave at least one recall command to Axel before Plaintiff's injury occurred. Dkt. No. 28-1 ¶ 14. It is undisputed that neither Defendant Howard nor any other officer gave Axel a command to apprehend or bite Plaintiff. Dkt. No. 28-5 at 55. Defendant Howard testified under oath that K-9 Axel broke away from his leash and disobeyed his direct command to recall. Dkt. No. 28-5 at 24, 64. Additionally, Defendant Cox testified in his deposition that the leash broke. Dkt. No. 24-5 at 39. In his Internal Affairs interview, Defendant Cox told Major Jenkins that Defendant Howard showed him part of the leash, and Defendant Cox confirmed that it was broken. Dkt. No. 30-3 at 16:40:46-16:41:20. Plaintiff has not pointed to any other evidence to genuinely dispute these sworn facts.

Similar to this case, in Sturkey v. Fields, No. 1:12-CV-4439-TCB, 2013 WL 12331222 (N.D. Ga. Nov. 6, 2013), the Court granted summary judgment where a police K-9 unintentionally exited the police vehicle and bit a seized plaintiff. Without any intention by the defendant to exert force, the Court held that "there can be no Fourth Amendment violation, and [plaintiff]'s § 1983 claim fails as a matter of law." Id. at *3; see also Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989) (holding that there is no Fourth Amendment violation where there is no intention to apply force).

Thus, case law indicates that the accidental application of force does not implicate Plaintiff's constitutional rights.[6] Consequently, rather than providing "fair warning" that Defendant Howard's conduct violated a "clearly established" right, the law of this Circuit suggests that Defendant Howard acted in a constitutionally permissible manner. See Sturkey, 2013 WL 12331222 at *3 ("An accident arising from otherwise lawful police conduct does not constitute an unreasonable seizure." (citing Brower, 489 U.S. at 596)). Since there is no clearly established law holding that a person must be free from accidental application of force during an arrest, and the undisputed facts show Axel's apprehension of Plaintiff was, indeed, accidental, Defendant Howard is entitled

---

[6] Nor is this a situation where accidental application of force was gratuitously prolonged as to amount to a constitutional violation. Though Plaintiff estimated in his deposition that he thought the biting lasted "about five minutes," dkt. no. 24-6 at 32, Plaintiff's Statement of Undisputed Material Facts asserts that it took "15, 20, 25 seconds" for Defendant Howard to "run across the field" and reach Plaintiff. Dkt. No. 28-1 ¶ 16. Plaintiff, in his response brief, reaffirmed the latter timeframe by citing to Defendant Cox's testimony and again stating that it took "15, 20, 25 seconds" for Defendant Howard to reach K-9 Axel and Plaintiff. Dkt. No. 28-2 at 4, 18. It appears, therefore, that Plaintiff has abandoned his assessment that the biting lasted five minutes. Further, the undisputed evidence shows that Defendant Howard, upon reaching Plaintiff, began attempting to pull K-9 Axel off Plaintiff. Dkt. No. 28-4 at 27; Dkt. No. 28-6 at 32. As such, nothing in the record suggests that the officers gratuitously prolonged the attack under the circumstances. Rather, undisputed testimony notes that Defendant Howard was running to Plaintiff in a panic and "hollering at the dog." Dkt. No. 28-4 at 38. In the absence of any indication that the officers had the ability to shorten the length of the bite period and unreasonably refused to do so, no evidence exists that the accident here was prolonged as to become an unconstitutional use of excessive force. See Jones v. Fransen, 857 F.3d 843, 854 n.5 (11th Cir. 2017) (granting summary judgment, even though the plaintiff described the bite as "seem[ing] like a lifetime," because nothing in the complaint suggested that the officers "sadistically or gratuitously prolonged the attack").

to qualified immunity from Plaintiff's § 1983 claim alleging Axel's bite constituted excessive force.

### 3. Defendant Cox

Plaintiff also alleges that Defendant Cox, in his individual capacity, deprived Plaintiff of his Fourth Amendment protections by "failing to prevent" Axel from biting Plaintiff during his arrest. Dkt. No. 1 ¶ 41. A police officer has a constitutional obligation to intervene when he witnesses "the use of excessive force and has the ability to intervene." See Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986). Moreover, the Eleventh Circuit's holding in Priester specifically "establishes that under certain circumstances failure to intervene in a dog attack is an obvious use of excessive force." Trammell v. Thomason, 335 F. App'x 835, 844 (2009); see Priester, 208 F.3d at 925. However, Defendant Cox argues that Plaintiff has failed to set forth a factual basis for his claim. Dkt. No. 24-1 at 17.

A plaintiff successfully alleges that an officer failed to intervene by showing: (1) a separate officer used excessive force amounting to a constitutional violation,[7] and (2) the officer was in a position to intervene and failed or refused to do so. Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1996); Byrd, 783 F.2d at 1007. Whether the intervening tactic was successful is

---

[7] The Court has already concluded that Defendant Howard is entitled to qualified immunity because the undisputed facts show that the bite was accidental.

immaterial. Instead, an officer is liable only if he did not take *any* "reasonable steps" to "protect the victim of another officer's use of excessive force" while he was in a position to do so. Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

First, in order to be liable for failing to stop excessive force, an officer must be "in a position to intervene." Ensley, 142 F.3d at 1407. The Eleventh Circuit found in Priester that an officer was in position to intervene where he "watched the entire event" unfold and "was in voice contact" with the police canine's handler. 208 F.3d at 925. Here, it is undisputed that Defendant Cox witnessed the events unfold and that he was able to communicate with Defendant Howard.

However, Plaintiff cannot show that Defendant Cox failed or refused to intervene on Plaintiff's behalf. According to Plaintiff's own sworn deposition, Cox intervened to stop Axel's apprehension of Plaintiff. Plaintiff testified that after Axel bit Plaintiff, Defendant Cox yelled to Howard, demanding he give Axel the command to release Plaintiff at least three times during the incident. See Dkt. No. 28-6 at 29 ("[T]he Cox dude, he was like, 'Give him the command. Give him the command.' . . . He said, 'Give him the command.'"). Such action should not be considered a failure or refusal to intervene. In Priester, the Eleventh Circuit suggests that reasonable intervention in cases involving police canine apprehension includes an officer's instructing the canine handler

to remove the dog from the suspect. See 208 F.3d at 925 ("Two minutes was long enough for a reasonable jury to conclude that [the defendant] had time to intervene and to order [the K-9 handler] to restrain the dog."). An officer is only liable if he did not take *any* reasonable steps to intervene. By demanding that Defendant Howard give Axel the command to release Plaintiff, Defendant Cox took the reasonable action that the defendant in Priester did not.

Moreover, Defendant Cox's actions were reasonable considering his training. Defendant Cox is not a police canine handler, has no experience with police canines, and does not know any canine commands. Dkt. No. 28-5 at 41, 45. Additionally, K-9 Axel was trained to listen and respond to commands given only by Defendant Howard. Dkt. No. 28-5 at 67. Therefore, the undisputed facts show that Defendant Cox did not fail to intervene by calling off Axel because he did not have the training or means to do so himself.

Plaintiff has not carried his burden to show that Defendant Cox failed to intervene in an unconstitutional manner. Consequently, qualified immunity shields Defendant Cox from Plaintiff's claim. See Shaw v. City of Selma, 884 F.3d 1093, 1099 (11th Cir. 2018) (a plaintiff must "prove that the facts alleged, construed in the light most favorable to [him], establish that a constitutional violation did occur" (citing Smith v. LePage, 834 F.3d 1285, 1291 (11th Cir. 2016))).

## B. State Law Claims

Plaintiff has also alleged various state law claims against Defendants. First, Plaintiff claims that both Defendants were "negligent in the handling of Axel and have violated state common law by allowing police officers to use excessive force against" Plaintiff. Dkt. No. 1 ¶ 47. Second, Plaintiff claims that both Defendants are liable for assault, battery, and intentional infliction of emotional distress under Georgia state law. Id. ¶¶ 49-56. Defendants contend that they are entitled to official immunity on these state law claims. Dkt. No. 24-1 at 13.[8]

In Georgia, the doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001) (citations omitted); see also Ga. Const. art. I, § II, ¶ IX. Therefore, to overcome official immunity, Plaintiff must establish either: (1) that his claims arise out of the performance of a ministerial function, or (2) that Defendants acted with actual malice toward Plaintiff.

A ministerial act is one that is "simple, absolute, and definite, arising under conditions admitted or proved to exist,

---

[8] Although Plaintiff's Complaint alleges state law claims against both Defendants, the Complaint and subsequent briefing states such claims against only Defendant Howard. See, e.g., Dkt. No. 28-2 at 14-15. Without more, these conclusional allegations warrant summary judgment on the state law claims against Defendant Cox.

and requiring merely the execution of a specific duty." <u>Odum v. Harn</u>, 829 S.E.2d 818, 819 (Ga. Ct. App. 2019), <u>cert. denied</u> (Ga. Jan. 27, 2020). On the other hand, a discretionary function "calls for the exercise of personal deliberation and judgment" to reach "reasoned conclusions" by acting "in a way not specifically directed." <u>Id.</u> However, "even when an officer clearly owes a duty of care and is absolutely required to do something, unless she has been commanded—by law or by the policy or directive of her employer—to do a particular thing, she still is engaged in the performance of a discretionary function." <u>Barnett v. Caldwell</u>, 809 S.E.2d 813, 816 (Ga. 2018).

Plaintiff argues that Defendant Howard is personally liable for various ministerial acts he negligently failed to perform. Dkt. No. 28-2 at 14-15. Specifically, Plaintiff contends that Defendant Howard: "did not check the lease of K-9 Axle [sic] prior to his tour of duty"; "had a simple and absolute duty to control K-9 Axel"; "[h]ad a simple and absolute duty to be able to recall K-9 Axle [sic]"; and was "negligent when K-9 Axle [sic] failed to obey the command to recall and stop." Dkt. No. 28-2 at 15.

Chief Deputy George Trexler's affidavit confirmed the McIntosh County Sheriff Department does not have a policy requiring K-9 deputies to inspect their equipment prior to their shift.[9] Dkt.

---

[9] Plaintiff asserts that all officers were required to check their equipment prior to the tour of duty. Dkt. No. 28-2. Chief Deputy Trexler's affidavit clarifies that only Patrol Division supervisors are required to visually inspect

No. 30-2 ¶ 5. Nor do the K-9 Unit Procedures contain any requirement that the K-9 handlers inspect their equipment. Id. ¶ 9. Even if Defendant Howard owed a duty of care in his control over K-9 Axel, this alone does not establish a ministerial duty. The policies and procedures must be so clear and definite in directing Defendant Howard's handling of Axel that it required "no exercise of discretion whatsoever." Barnett, 809 S.E.2d at 817. Here, Defendant Howard was engaged in a discretionary function—rather than a ministerial act—in handling K-9 Axel. See Eshleman v. Key, 774 S.E.2d 96, 101 (Ga. Ct. App. 2015) (explaining that an officer required to take reasonable measures to restrain a police dog must exercise "personal deliberation and judgment" in deciding whether equipment and training was sufficient).

Consequently, Plaintiff cannot overcome official immunity unless he demonstrates actual malice in Defendant Howard's conduct. See Gilbert v. Richardson, 452 S.E.2d 476 (1994); Ga. Const. art. I, § II, ¶ IX (d). In Georgia, malice is a high bar:

> [I]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.

---

equipment prior to a tour of duty. Defendant Howard was not a member of the Patrol Division on the date of the incident. Dkt. No. 30-2 at 2.

Selvy v. Morrison, 665 S.E.2d 401, 404–05 (Ga. App. 2008) (internal quotations and citations omitted) (alteration in original). Here, Plaintiff has provided no evidence that Defendant Howard deliberately intended to do wrong toward Plaintiff. In fact, As noted above, the undisputed facts demonstrate that Defendant Howard did *not* have an intent to apply the force at issue. Therefore, Plaintiff has not shown the actual malice required to overcome the application of official immunity; Defendant Howard is entitled to official immunity on Plaintiff's state law claims.

### C. Unidentified Defendants

In his Complaint, Plaintiff also names unidentified police officers, John Does, as defendants. See Dkt. No. 1. With the granting of summary judgment on all claims against the named Defendants, only the unidentified Doe defendants remain in the suit. Fictitious-party pleading is generally not permitted in federal court. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Even if it were, there would be no reason to maintain this case. By failing to assert anything more than conclusory allegations against the Doe defendants in his Complaint, see dkt. no. 1 ¶ 7, and by failing to support any claim against them in his response to Defendants' motion for summary judgment, Plaintiff provides no ground on which he can maintain a suit against them. Accordingly, the Court must excuse the Doe defendants and close this case.

### D. Punitive Damages and Attorney's Fees

Finally, because Plaintiff has no remaining underlying claims against Defendants, he is not entitled to the requested punitive damages and attorney's fees.

### CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, dkt. no. 24, is **GRANTED** in its entirety.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 9th day of November, 2020.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA